# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

AMOS TYNDALL, Administrator of the Estate of Timothy E. Helms,

        Plaintiff,

v.

TIMOTHY DEAN MAYNOR, Individually and Officially,

        Defendant.

1:11CV836

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Defendant's Motion to Amend Answer (Docket Entry 29) and Plaintiff's Motion to Amend Discovery Schedule (Docket Entry 32). For the reasons that follow, the Court will deny Defendant's Motion to Amend Answer and will deny Plaintiff's Motion to Amend Discovery Schedule, except as to the request for an extension of the mediation deadline. The Court also will require the parties to show cause why the Complaint and related documents should remain under seal.

### BACKGROUND

Attorneys S. Luke Largess of Tin Fulton Walker & Owen PLLC, Lynne M. Holtkamp of the Holtkamp Law Firm, and Barry T. Winston of the Law Office of Barry Winston instituted this action in state court on Plaintiff's behalf. (Docket Entry 5 at 16-17.) On October 6, 2011, Defendant removed the case to this Court via a

Notice filed by Peter A. Regulski, an Assistant Attorney General ("AAG") with the North Carolina Department of Justice ("NCDOJ"). (Docket Entry 1.)[1]  Defendant simultaneously moved:

1) for leave to file certain exhibits (Docket Entry 3), the Complaint (Docket Entry 5), and the Summons (Docket Entry 6) "under seal subject to this Court's determination of whether the protective order entered in [a related case before the North Carolina Industrial Commission ('NCIC')] is authoritative herein, whether its terms ought to be adopted herein, or whether a new protective order ought to be entered" (Docket Entry 2 at 3); and

2) for an extension of time from October 13, 2011, the deadline under Federal Rule of Civil Procedure 81(c)(2) (see Docket Entry 4 at 1), "to and including 12 December 2011 in which to answer or otherwise to plead" (id. at 3), due to AAG Regulski's need for more time "to complete review [of the case and materials from the related NCIC case] and prepare an answer or other response" (id. at 2), as well as his other work demands (id. at 3).

After the Court granted both of the foregoing Motions (Docket Entries 9, 10), Defendant moved, on December 7, 2011, for a further

---

[1] According to said Notice, "Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 claiming Defendant, a correctional officer, violated the Eighth Amendment rights of Plaintiff's decedent, an inmate in the custody of the North Carolina Department of Correction, by his alleged use of excessive force and by his alleged deliberate indifference."  (Docket Entry 1 at 1 (internal parenthetical omitted).)

extension "up to and including 31 January 2012 in which to answer or otherwise plead." (Docket Entry 11 at 2.) In support of that request, Defendant noted the following:

> On 8 October 2011 [AAG Regulski] began to experience serious health symptoms. [He] was admitted to the hospital on 11 October 2011 for emergency surgery. [AAG Regulski] was released from the hospital on 20 October 2011 but not medically cleared to return to work. On 30 October 2011, [he] was readmitted to the hospital with further complications and [underwent] additional surgery. [AAG Regulski] was released from the hospital on 4 November 2011 but not medically cleared to return to work. On 25 November 2011, [he] was readmitted to the hospital for a third time with additional complications. [AAG Regulski] was released this final time on 1 December 2011, but has not been cleared to return to work as of this date. It is unlikely [he] will be permitted to resume work prior to 31 December 2011 and then with limited restrictions.

(Id. at 1-2.) The Court granted that Motion. (Docket Entry 12.)

Thereafter, on December 31, 2011, a second AAG with the NCDOJ appeared and answered for Defendant. (Docket Entries 13, 14).[2] Following litigation over venue (see Docket Entry 22),[3] in a joint report filed May 21, 2012, the parties agreed, in relevant part, to these case-management deadlines:

1) "[t]he date for the completion of all discovery (general and expert) is January 13, 2013" (Docket Entry 24 at 2 (internal colon omitted));

---

[2] A third AAG later appeared for Defendant, in place of the second AAG, who simultaneously withdrew. (Docket Entries 27, 28.)

[3] Plaintiff's filing as to that issue lists Attorneys Largess, Holtkamp, and Winston as his counsel. (Docket Entry 19 at 5-6.)

3

2) "[r]eports from retained experts under [Federal] Rule [of Civil Procedure] 26(a)(2) are due . . . [f]rom Plaintiff by September 17, 2012 . . . [and] [f]rom Defendant by October 30, 2012" (id. (internal colon omitted));

3) "[m]ediation should be conducted between November 1, 2012 and November 9, 2012, the exact date to be set by the mediator after consultation with the parties" (id.); and

4) Defendant "shall be allowed until October 1, 2012 to request leave to . . . amend pleadings" (id. at 3).[4]

The Court promptly adopted the foregoing agreed-upon deadlines as part of the Scheduling Order. (Text Order dated May 31, 2012; Mediation Scheduling Order dated June 4, 2012; see also Docket Entry 25 (appointing mediator).) A short time later, the Clerk noticed the case for trial on July 1, 2013. (Docket Entry 26.) Subsequently, according to Defendant, "[o]n 15 August 2012 Defendant served . . . discovery [that] was timed to coincide with the expert disclosure date of 17 September 2012 [and that requested,] . . . '[p]ursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, all written reports of each person you expect to call as an expert witness in the trial of this cause.'" (Docket Entry 34 at 4.) Plaintiff does not dispute this fact (see

---

[4] Said Joint Report notes that Attorneys Largess and Holtkamp participated in the conference resulting in the parties' agreement on these points (Docket Entry 24 at 1) and identifies Attorneys Largess, Holtkamp, and Winston as counsel for Plaintiff (id. at 4).

Docket Entry 36) and an e-mail dated September 5, 2012, from AAG Regulski to Attorney Holtkamp (with a courtesy copy to Attorney Largess) indicates that, the preceding day, Attorney Holtkamp left AAG Regulski a voice-mail seeking his consent to a 30-day extension of time to respond to those discovery requests and that, via said e-mail, AAG Regulski so consented. (Docket Entry 34-3 at 2.)

On October 1, 2012, Defendant filed his instant Motion to Amend Answer, "pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure," in which, as "support" therefore, he states:

> 1. Pursuant to Fed. R. Civ. P. 26(f) and LR16.1(b), a Joint Rule 26(f) Report was filed in this matter on May 21, 2012.
>
> 2. Pursuant to section 5(b) of the Report, "Defendants shall be allowed until October 1, 2012 to request leave to join additional parties or amend pleadings."
>
> 3. Defendant requests leave to amend his Answer to further plead as an Affirmative Defense the Doctrine of Sudden Emergency.
>
> 4. Copies of Defendant's proposed Amended Answer and Order Granting Leave to Amend are attached hereto. The attached proposed Amended Answer is undated, and should leave be granted, Defendant will file a dated and signed Amended Answer.

(Docket Entry 29 at 1.)[5]   Thereafter, Plaintiff responded in

---

[5] The language Defendant proposed to add appears as follows:

On 3 August 2008 Plaintiff's decedent set fire to the mattress in his cell, which mandated the rapid evacuation of [Plaintiff's decedent] and his entire cellblock. Plaintiff's decedent's setting of the fire triggered Defendant['s] duty to extinguish the fire and rapidly evacuate the cellblock. As a direct and proximate result

5

opposition (Docket Entry 30)[6] and Defendant replied (Docket Entry 31).

In the midst of that briefing, on October 17, 2012, Plaintiff, via Attorney Holtkamp (see Docket Entry 34-4 at 15), responded to Defendant's discovery requests and, as to the request, "[p]ursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, [for] all written reports of each person [Plaintiff] expect[s] to call as an expert witness in the trial of this cause" (id. at 13), objected and stated that "Plaintiff will provide this information upon the entry of a scheduling order" (id.). By letter dated October 30, 2012, addressed to Attorneys Largess, Holtkamp, and Winston, AAG Regulski called attention, inter alia, to the failure of Plaintiff to serve expert reports by the Scheduling Order deadline and Defendant's right to oppose any effort by Plaintiff to seek leave of court to serve them belatedly. (Docket Entry 34-5 at 3; see also Docket Entry 34-6 at 2 (e-mail exchange indicating that, in addition to mailing the foregoing letter to Attorneys Largess, Holtkamp, and Winston on October 30, 2012, AAG Regulski e-mailed it

> of Plaintiff's decedent's actions, Defendant [], through no fault of his own, was suddenly and unexpectedly confronted with imminent danger to himself and others. Defendant [] pleads the doctrine of sudden emergency as an affirmative defense.

(Docket Entry 29-1 at 13.)

[6] Said Response lists Attorneys Largess, Holtkamp, and Winston as Plaintiff's counsel. (Docket Entry 30 at 2.)

to them on October 31, 2012, as well as that Attorney Holtkamp received said letter); Docket Entry 34-7 at 2-3 (e-mail exchange indicating that, in addition to mailing the foregoing letter to Attorneys Largess, Holtkamp, and Winston on October 30, 2012, AAG Regulski e-mailed it to them on October 31, 2012, as well as that Attorney Largess received said letter).)

By e-mail on Friday, November 16, 2012, Attorney Holtkamp addressed another aspect of AAG Regulski's foregoing letter, but did not mention expert reports. (See Docket Entry 34-6 at 2.) Late that same day, Attorney Largess sent an e-mail to AAG Regulski with these comments: "Thanks for the letter, [AAG Regulski]. You bring up lots of issues we need to address to get this case on track. Are you still around today to discuss briefly or will you be in on Monday?" (Docket Entry 34-7 at 2.) AAG Regulski responded to Attorney Largess the next day with proposed times for them to talk the following Monday and Tuesday. (Id.) Later that afternoon, Attorney Largess replied to AAG Regulski as follows:

> Thanks for your note. I should be in by 7:30 on both Monday and Tuesday. I mentioned some of the following in a phone message I left late Friday.
>
> My wife got very sick in August with the West Nile virus and had to be hospitalized and then convalesce at home once she got out of the really critical stage. For about six weeks, my attention was completely diverted by her health and a huge logjam developed at work. I let these expert deadlines in this case pass – as you noted in your letter. She is finally getting better and hopes to go back to work in January, but remains on disability leave.

7

I recall at the beginning of this case that you, [AAG Regulski], had some health problems and we gave you a fair [sic] to file the answer due to your difficulties. I am asking that you return that favor for me and we do the following to reset the discovery schedule in the case.

1. We will name our experts by Dec 3.
2. You can name yours six weeks later, mid-January.
3. We finish all discovery by the end of Feb, instead of the middle of January – and we mediate in February.

This will depend on the court agreeing to the proposal. Why don't you discuss among yourselves on Monday and we can talk early Tuesday – maybe at 7:30 or 8:00.

Thanks for your consideration.

(Id.)

"On 20 November 2012, Defendant rejected the [above-quoted] proposal." (Docket Entry 34 at 6; see also Docket Entry 32 at 3 (stating in filing dated November 26, 2012: "Defendant's counsel pondered the request and then replied last week that they could not consent. Though [Defendant's counsel] might wish to do so as a matter of professional courtesy, [Defendant's] counsel believed it would be prejudicial to its client.").) Plaintiff filed the instant Motion to Amend Discovery Schedule on November 26, 2012. (Docket Entry 32.)[7] Defendant then responded in opposition (Docket

---

[7] Said Motion identifies Attorneys Largess, Holtkamp, and Winston as counsel for Plaintiff. (Docket Entry 32 at 4.)

Entry 34) and Plaintiff replied (Docket Entry 36).[8]

<u>DISCUSSION</u>

<u>Defendant's Motion to Amend Answer</u>

Via his instant Motion, "Defendant requests leave to amend his Answer to further plead as an Affirmative Defense the Doctrine of Sudden Emergency." (Docket Entry 29 at 1.) "A party may amend its [answer] once <u>as a matter of course</u> within . . . 21 days after serving it . . . ." Fed. R. Civ. P. 15(a)(1) (emphasis added). Defendant apparently recognized that his proposed addition of a new affirmative defense came too late to occur <u>as a matter of course</u>, because he moved pursuant to the alternative provision, "Rule 15(a)(2) of the Federal Rules of Civil Procedure" (Docket Entry 29 at 1), under which "a party may amend its pleading only with the opposing party's written consent or the court's leave," Fed. R. Civ. P. 15(a)(2). (Docket Entry 29 at 1.) Defendant did not claim to have received written consent from Plaintiff (see <u>id.</u>) and, with his response in opposition to the instant Motion, Plaintiff confirmed his denial of consent (see Docket Entry 32).

Regarding the securing of leave from the Court, the applicable Federal Rule of Civil Procedure states that "[t]he [C]ourt should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Defendant thus has the burden of showing that the

---

[8] Plaintiff's above-cited Reply lists Attorneys Largess, Holtkamp, and Winston as his counsel. (Docket Entry 36 at 14.)

interest of justice warrants his proposed amendment; moreover, under this Court's Local Rules, although Defendant had no obligation to file a brief supporting his instant Motion, such motions "must state good cause therefor and cite any applicable rule, statute, or other authority justifying the relief sought." M.D.N.C. LR7.3(j).  As documented in the Background section, Defendant's instant Motion offers no showing of any, much less good, cause for his proposal and includes no argument or authority regarding even the existence, let alone applicability to this case, of the affirmative defense he seeks to add.  (See Docket Entry 29.)

     After Plaintiff pointed out this deficiency (see Docket Entry 30 at 1), Defendant, in reply, observed that, via the parties' joint report regarding scheduling adopted by the Court, he "was allowed until [the date he filed the instant Motion] to seek leave to file an amended answer . . . [and stated that,] [b]ecause the parties had agreed in advance to th[at] time schedule and because [he] proposed only to add an additional affirmative defense borne of the facts alleged in the Complaint, [he] treated the proposed amendment as a matter of course" (Docket Entry 31 at 1-2 (emphasis added)).  This contention cannot withstand scrutiny, given that the Federal Rules of Civil Procedure expressly restrict amendment "as a matter of course" to other circumstances, that Defendant did not obtain written consent for the amendment from Plaintiff, and that (by his own acknowledgment) the Scheduling Order merely permitted

the <u>seeking</u> of leave by the date in question, without altering the requirements for the <u>securing</u> of such leave.

With his Reply, Defendant also, for the first time, offered arguments and authority regarding the purported legitimacy and applicability of his proposed new affirmative defense. (<u>See</u> <u>id.</u> at 3-5.) Members of this Court, however, have consistently held that "[r]eply briefs . . . may not inject new grounds . . . [and that an] argument [that] was not contained in the main brief . . . is not before the Court." <u>Triad Int'l Maint. Corp. v. Aim Aviation, Inc.</u>, 473 F. Supp. 2d 666, 670 n.1 (M.D.N.C. 2006) (citing M.D.N.C. LR7.3(h)) (recommendation of Eliason, M.J., adopted by Beaty, J.); <u>accord, e.g.</u>, <u>Jarvis v. Stewart</u>, No. 1:04CV642, 2005 WL 3088589, at *1 (M.D.N.C. Nov. 17, 2005) (unpublished) (Osteen, Sr., J.) ("[I]t is not appropriate to present such new argument in a reply." (citing M.D.N.C. LR7.3(h))). The Court will adhere to this view.

Under these circumstances, the Court will deny Defendant's Motion to Amend Answer.[9]

--------

[9] For reasons stated in <u>Deberry v. Davis</u>, No. 1:08CV582, 2010 WL 1610430, at *7 n. 8 (M.D.N.C. Apr. 19, 2010) (unpublished), the undersigned United States Magistrate Judge will enter an order, rather than a recommendation, regarding this Motion. <u>See also</u> <u>Everett v. Prison Health Servs.</u>, 412 F. App'x 604, 605 & n. 2 (4th Cir. 2011) ("Everett moved for leave to amend her complaint . . . to add . . . a defendant based on information obtained during discovery, and to add a state-law claim of medical malpractice against [that new defendant]. After a hearing, the magistrate judge denied Everett's motion. Everett timely objected, thereby preserving the issue for review by the district court. . . . [T]he district court could not modify or set aside any portion of the

<u>Plaintiff's Motion to Amend Discovery Schedule</u>

The Federal Rules of Civil Procedure require the issuance of a scheduling order in each case. <u>See</u> Fed. R. Civ. P. 16(b)(2). As detailed in the Background section, the parties here (through the active participation of Attorneys Largess and Holtkamp) proposed and the Court (with notice to Attorneys Largess, Holtkamp, and Winston) adopted a scheduling order that set a discovery deadline of January 13, 2013, deadlines of September 17 and October 30, 2012, for service of expert reports by Plaintiff and Defendant, respectively, and a mediation deadline of November 9, 2012. (Docket Entry 24; Text Order dated May 31, 2012; Mediation Scheduling Order dated June 4, 2012.) Plaintiff's instant Motion seeks to alter these dates "due to exigent personal circumstances . . . [of Attorney] Largess." (Docket Entry 32 at 1.)

In general, "[a] schedule may be modified only for <u>good cause</u> and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). "[T]he touchstone of 'good cause' under [Federal] Rule [of Civil Procedure] 16(b) is <u>diligence</u>." <u>Marcum v. Zimmer</u>, 163 F.R.D. 250, 255 (S.D.W. Va. 1995) (emphasis added); <u>see also</u> Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) ("[T]he court may modify the schedule on a showing

---

magistrate judge's order unless the magistrate judge's decision was 'clearly erroneous or contrary to law.' Fed. R. Civ. P. 72(a); 28 U.S.C.A. § 636(b)(1)(A) (2006 & Supp. 2010).").

of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."); M.D.N.C. LR26.1(d) (providing that motions seeking to extend discovery period "must set forth good cause justifying the additional time and will be granted or approved only upon a showing that the parties have diligently pursued discovery"). Plaintiff, however, has identified nothing which would support a finding that he acted with diligence regarding the service of expert reports.

To the contrary, the record (as shown in the Background section) reflects that, on October 17, 2012, Plaintiff (through Attorney Holtkamp) refused to provide expert reports to Defendant based on the frivolous assertion that the Court had not entered a scheduling order (Docket Entry 34-4 at 13, 15), when (in fact) Attorney Holtkamp negotiated the agreement to set September 17, 2012, as the deadline for serving Plaintiff's expert reports (Docket Entry 24 at 1, 2) and received notice of the Court's adoption of that agreement (Text Order dated May 31, 2012). Further, (as the Background section details) even after AAG Regulski directly informed Attorneys Largess, Holtkamp, and Winston (via letter mailed October 30, 2012, and e-mailed October 31, 2012) that Plaintiff had not timely served expert reports (Docket Entry 34-5 at 3; Docket Entry 34-6 at 2; Docket Entry 34-7 at 2-3), they did nothing for more than two weeks, until at last, via telephone and e-mail on November 16 and 17, 2012, Attorney Largess sought

Defendant's consent to a post-hoc extension of the expert report deadline, as well as a related extension of the overall discovery deadline (Docket Entry 34-7 at 2).  Finally, Plaintiff waited almost another week after learning that Defendant would not agree to the proposed extension before filing the instant Motion.  (See Docket Entry 32 at 3, 4; Docket Entry 34 at 6.)  Such conduct does not constitute diligence of the sort required to satisfy Federal Rule of Civil Procedure 16(b)(4)'s "good cause" standard.[10]

---

[10] The Court rejects Plaintiff's attempt to secure relief by asserting that Attorney Holtkamp "has limited experience in federal court . . . [and] did not enter the schedule in her calendar simply because she was accustomed to working from a paper order" (Docket Entry 36 at 5).  First, "'carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.'" Marcum, 163 F.R.D. at 254 (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (ellipses and emphasis omitted)); accord, e.g., 3 James Wm. Moore et al., Moore's Fed. Prac. — Civil § 16.14 [b] (3d. 2009).  Second, inexperience in federal court or unfamiliarity with electronic orders does not explain why Attorney Holtkamp, along with Attorneys Largess and Winston, waited a half-month to respond when Defendant raised Plaintiff's failure to serve expert reports.  Third, at all times, Attorneys Largess and Winston had notice of the operative deadline, but failed to act.  In that regard, the Court concludes Attorney Largess's inability to work during his wife's hospitalization and early at-home convalescence does not insulate him from all responsibility for Plaintiff's total disregard of the expert report deadline.  At a minimum, Attorney Largess should have asked his co-counsel to seek a timely extension.  In addition, by Attorney Largess's own account, his wife fell ill in August 2012 and he "was out of the office for about one month and then worked on a reduced schedule for an additional period of time."  (Docket Entry 32 at 2.)  Affording Attorney Largess every favorable inference, he thus had resumed work (at least part-time) by October 1, 2012, and should have taken steps to address this situation well before November 16 and 17, 2012.  Finally, the Court cannot accept the suggestion that Attorney Winston lacks accountability.  As documented throughout the Background section, Plaintiff's filings

Additionally, because Plaintiff did not file the instant Motion until after the deadline for serving his expert reports had passed, he also must establish "excusable neglect." Fed. R. Civ. P. 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). "'Excusable neglect' is not easily demonstrated, nor was it intended to be." Thompson v. E.I. DePont Nemours & Co., Inc., 76 F.3d 530, 534 (4th Cir. 1996). The Court's review of controlling authority and the record confirms that Plaintiff has not made the requisite showing.

The United States Supreme Court has explained that the excusable neglect inquiry "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). "These include . . . [1] the danger of prejudice to the [opposing party], [2] the length of the delay and [3] its potential impact on judicial proceedings, [4] the reason for the delay, including whether it was within the reasonable control of the movant, and [5] whether the movant acted

_____

in this Court consistently list Attorney Winston as counsel of record. (See, e.g., Docket Entry 19 at 6; Docket Entry 32 at 4.) Moreover, although Plaintiff asserted more than three weeks ago that Attorney Winston "will be removed from the pleadings" (Docket Entry 36 at 6), the record reflects no motion to withdraw to date (see Docket Entries dated Dec. 10, 2012, to present).

in good faith." Id. (emphasis added).[11]  Considering those factors

in the context of this case, the Court first observes that granting

Plaintiff's requested relief would require a significant extension

of the discovery period and thus would jeopardize the long-

scheduled trial date (or, at a minimum, would deprive the Court of

a reasonable amount of time to assess any dispositive motions

before such date).  These consequences portend possible serious

prejudice to Plaintiff's interest in maintaining an agreed-upon and

judicially-sanctioned end-point for this case, as well as an

adverse impact on the Court's proceedings.  Moreover, (as discussed

above) Plaintiff missed the deadline for serving expert reports by

more than two months, a delay of unreasonable length under the

circumstances, particularly given the absence of an acceptable

reason for such delay and the fact that some of Plaintiff's conduct

(such as the frivolous refusal to provide expert reports based on

the claimed absence of a scheduling order) indicate a possible lack

of good faith.  On balance, the Pioneer factors thus demonstrably

---

[11] The fourth of the above-quoted Pioneer factors carries the most significance.  See Thompson, 76 F.3d at 534.  Moreover, in reviewing that and the other factors, courts must not focus only on the actions (or inaction) of the party, but also "on whether [that party's] attorney, as [the party's] agent, did all he reasonably could to comply with the [deadline]."  Pioneer, 507 U.S. at 396; see also id. at 396-97 (taking note of prior decisions, "[i]n other contexts, . . . [holding] that clients must be held accountable for the acts and omissions of their attorneys" in declaring that, "in determining whether [a party's] failure to [meet a deadline] was excusable, the proper focus is upon whether the neglect of [the party] and [the party's] counsel was excusable").

16

tilt against a finding of excusable neglect.[12]

Plaintiff's invocation of Defendant's receipt of extensions of time to file an answer (see Docket Entry 32 at 1; Docket Entry 36 at 3) does not alter the foregoing conclusions.  First, unlike Plaintiff here, Defendant sought such extensions prior to, not after, the passage of the applicable deadline.  (See Docket Entries

_____

[12] Any lack of familiarity with federal court or electronic orders on Attorney Holtkamp's part does not establish excusable neglect.  See Pioneer, 507 U.S. at 392 ("[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect . . . ."); Thompson, 76 F.3d at 535 (ruling that "run-of-the-mill inattentiveness by counsel" does not qualify as excusable neglect).  Moreover, Attorneys Largess and Winston also knew about the relevant deadline, but failed to act before it expired (as well as afterwards and even for weeks after AAG Regulski confronted them about the matter).  Attorney Largess's absence from work during his wife's acute illness similarly provides no basis for a finding of excusable neglect under the circumstances of this case.  According to Attorney Largess, after his wife fell ill in August 2012, he "was out of the office for about one month and then worked on a reduced schedule for an additional period of time."  (Docket Entry 32 at 2.)  Attorneys Holtkamp and Winston had an obligation to meet deadlines during Attorney Largess's temporary unavailability and Attorney Largess should have asked them to file a timely extension request.  Further, Attorney Largess returned to his office no later than October 1, 2012, and had a duty to begin dealing with the expert report issue long before he finally did on November 16 and 17, 2012, even if his absence from work negatively affected his caseload.  See Pioneer, 507 U.S. at 398 (ruling that, in assessing "reason for delay," courts should "give little weight to the fact that counsel was experiencing upheaval in his law practice").  Nor will the Court countenance the suggestion that Attorney Winston lacks responsibility.  As shown in the Background section, the record confirms that Plaintiff's filings uniformly identify Attorney Winston as counsel of record.  (See, e.g., Docket Entry 19 at 6; Docket Entry 32 at 4.)  Indeed, despite Plaintiff's representation weeks ago that Attorney Winston "will be removed from the pleadings" (Docket Entry 36 at 6), he has not moved to withdraw (see Docket Entries dated Dec. 10, 2012, to present).

17

1, 4, 10, 11.) Second, whereas the requests by Defendant for more time to answer came at the inception of the case, before adoption of case-management deadlines, Plaintiff's instant Motion implicates the Scheduling Order to which he agreed and which the Court adopted. Accordingly, entirely different legal standards govern the availability of relief in the two contexts. <u>See</u> Fed. R. Civ. P. 6(b) (requiring additional showing of "excusable neglect" by litigants making tardy extension requests); Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) (explaining that "good cause" standard for modification of scheduling orders under Federal Rule of Civil Procedure 16(b)(4) imposes diligence test); <u>see also</u> <u>Ahanchian v. Xenon Pictures, Inc.</u>, 624 F.3d 1253, 1259 (9th Cir. 2010) (ruling that, under Federal Rule of Civil Procedure 6(b), "requests for extensions of time made before the applicable deadline has passed should 'normally be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party'" (internal ellipses omitted) (quoting 4B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 1165 (3d ed. 2004))); <u>Thompson</u>, 76 F.3d at 534 ("'Excusable neglect' is not easily demonstrated, nor was it intended to be."); <u>Forstmann v. Culp</u>, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (Gordon, S.J.) (rejecting notion that scheduling orders "can be cavalierly disregarded by counsel without

18

peril" (internal quotation marks omitted)).[13]

In sum, because Plaintiff has failed to show "good cause" under Federal Rule of Civil Procedure 16(b)(4) and "excusable neglect" under Federal Rule of Civil Procedure 6(b), the Court will not modify the deadlines for service of expert reports or completion of discovery. The Court, however, has an independent interest in seeing that the parties conduct mediation notwithstanding their mutual failure to do so by the deadline to which they agreed and which the Court adopted. See M.D.N.C. LR16.4 (mandating mediation for cases of this sort and requiring showing of good cause to obtain exemption). The Court thus will set a new deadline for mediation.

<u>Continued Sealing of the Complaint and Related Documents</u>

Upon removal, the Court permitted the filing of certain exhibits (Docket Entry 3), the Complaint (Docket Entry 5), and the Summons (Docket Entry 6) "under seal subject to this Court's

---

[13] Significant factual distinctions also exist between the circumstances that led Defendant to seek a <u>timely</u> extension of the answer deadline based on the ill health of AAG Regulski and Plaintiff's effort to secure an <u>untimely</u> extension of discovery deadlines based on the ill health of Attorney Largess's wife. Most notably, AAG Regulski acted as <u>sole</u> counsel of record for Defendant at the time of his <u>own</u> health crisis (<u>see</u> Docket Entries 11, 13, 27), whereas Attorney Largess served as but <u>one of three</u> counsel of record at the time of <u>his wife's</u> health crisis (<u>see</u> Docket Entries 19, 24, 30, 32). Moreover, disregarding those distinctions, Plaintiff has not explained why Defendant's receipt of relief on a timely-filed extension request should entitle Plaintiff to relief when he failed to file a timely extension request under comparable circumstances. (<u>See</u> Docket Entries 32, 36.)

19

determination of whether the protective order entered in [a related case before the NCIC] is authoritative herein, whether its terms ought to be adopted herein, or whether a new protective order ought to be entered." (Docket Entry 9 at 1.) The Court now will require the parties to show cause to warrant the maintenance of said filings under seal. In addressing this matter, the parties shall direct their attention to the standards for sealing set by the United States Court of Appeals for the Fourth Circuit. See generally Virginia Dep't of State Police v. Washington Post, 386 F.3d 567, 575-77 (4th Cir. 2004).

### CONCLUSION

Defendant's Motion to Amend Answer fails to offer any basis for the Court to find that the interest of justice warrants the requested amendment. Further, the Court will not consider arguments raised in reply, which Defendant should have offered with said Motion itself. For his part, Plaintiff has failed to establish good cause and excusable neglect so as to permit the Court to allow his untimely request to alter discovery deadlines. The Court, however, will require the parties to conduct mediation despite their failure (for which they bear mutual responsibility) to do so by the date to which they agreed (and which the Court adopted). Finally, the parties must show cause to justify the continued sealing of the Complaint and related documents.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Amend

Answer (Docket Entry 29) is **DENIED.**

      **IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Discovery Schedule (Docket Entry 32) is **DENIED**, except as to mediation, which the parties shall conduct by February 15, 2013.

      **IT IS FURTHER ORDERED** that, on or before January 18, 2013, the parties shall file a joint report setting out their shared or respective views on whether and, if so, why certain exhibits (Docket Entry 3), the Complaint (Docket Entry 5), and the Summons (Docket Entry 6) should remain under seal.

      This the 7th day of January, 2013.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
